**Donald W. PRESTON, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. ED 93727.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 31, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 7, 2010.

Mark A. Grothoff, Office of the Missouri Public Defender, Columbia, MO, for Appellant.

Chris Koster, Attorney General, James B. Farnsworth, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Donald Preston appeals from the motion court's judgment denying his Rule 29.15[1] motion for post-conviction relief in which Preston argued that the jury selection procedures employed by the Circuit Court in Lincoln County required a reversal of his conviction and new trial. Preston argues that the motion court clearly erred in denying his amended motion because the Lincoln County jury selection procedures, which permitted qualified jurors to decline jury service by agreeing to pay $50 and perform six hours of community service, substantially failed to comply with the declared policy of Sections 494.400 through 494.505.[2] Because the opt-out practice for qualified jurors in Lincoln County constituted a fundamental and systemic failure to comply with the statutory jury selection requirements, we hold the motion court's judgment to be clearly erroneous, and reverse.

### Factual Background

On May 17, 2007, the State of Missouri (the State) charged Preston by information with one count of class B felony attempt to

---

1. All rule references are to Mo. R.Crim. P.2009, unless otherwise indicated.

2. All statutory references are to RSMo Cum. Supp.2005, unless otherwise indicated.

manufacture a controlled substance (methamphetamine), in violation of Section 195.211. On June 7, 2007, Preston was found guilty of this charge following a jury trial, and the trial court subsequently sentenced him as a prior drug offender to fifteen years' imprisonment. This Court affirmed the trial court's judgment in a *per curiam* order, dated September 2, 2008. *State v. Preston*, 260 S.W.3d 927 (Mo.App. E.D.2008).

On November 24, 2008, Preston filed a *pro se* Rule 29.15 motion for post-conviction relief. Counsel was appointed and filed an amended motion on Preston's behalf on February 25, 2009. In his amended motion, Preston alleged that the presiding judge employed an opt-out practice which allowed individuals to avoid potential jury service by choosing instead to perform six hours of community service and pay a $50 fee. Preston claimed that this practice improperly restricted those persons eligible for random selection to his venire panel. Preston further alleged that neither his trial nor appellate counsel had knowledge of this practice at the time of his trial and filing of his direct appeal.

On May 22, 2009, the motion court conducted an evidentiary hearing in which Grace Sinclair, the Circuit Clerk of Lincoln County, provided testimony. Sinclair testified that, prior to any disqualification by virtue of ineligibility or excusal, 915 people comprised the pool of potential jurors for the April–July term of 2007, the term in which Preston's jury panel was constituted. Sinclair further testified that juror qualification forms were mailed to each of these 915 people. Based on their responses to these forms, 412 individuals were deemed to be "qualified jurors"—those individuals eligible for random selection to a venire panel. Of the 503 individuals not deemed to be "qualified jurors," 496 were found to be either ineligible or entitled to be excused from jury service. The remaining seven were deemed unqualified because they had elected to trade their jury service obligation for community service hours. Had these seven individuals not been permitted to select this community service option, Sinclair testified that the list of "qualified jurors" would have been 419, and not 412. Sinclair also testified that this practice has since ended.

On August 31, 2009, the motion court denied Preston's amended motion and concluded that the practice of which Preston complained was a "de minimus" statutory deviation and that Preston had not demonstrated any prejudice.

## Point on Appeal

In his one point on appeal, Preston claims that the motion court clearly erred because Lincoln County's allowance of a community service opt-out provision on the juror qualification forms allowed seven otherwise qualified individuals to effectively remove their names from the county's qualified jury list and avoid possible selection to his venire panel. Preston contends that this opt-out practice does not substantially comply with Missouri's jury selection statutes.

## Standard of Review

■ When reviewing a judgment entered on a Rule 29.15 motion for post-conviction relief, we consider whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). A motion court's factual findings and legal conclusions are clearly erroneous "when there is a definite and firm impression that a mistake has been made after reviewing the entire record." *Forrest v. State*, 290 S.W.3d 704, 708 (Mo. banc 2009) (internal citation omitted).

## Discussion

### I. Preston has timely raised his claim.

■ The State argues that Preston's claim was untimely filed because Section 494.465 requires that motions asserting non-conformity with Missouri's jury selection statutes must be made "at any time before the petit jury is sworn to try the case or within fourteen days after the moving party discovers or by the exercise of reasonable diligence could have discovered the grounds therefor, whichever occurs later." While we acknowledge the mandatory language of Section 494.465, the statutory violation which Preston complains of occurred without his actual or constructive knowledge. The violation occurred when the Lincoln County Board of Jury Commissioners assembled the qualified jury lists for the term in which Preston's jury was constituted. The record before us reveals no evidence that either Preston's trial or appellate counsel had knowledge of, or through reasonable diligence would have discovered the practice employed by the Lincoln County Circuit Court. As such, due to this exceptional circumstance, refusal to consider Preston's Rule 29.15 claim in this case would result in fundamental unfairness. *See Hudson v. State,* 248 S.W.3d 56, 58–59 (Mo.App. W.D.2008).

### II. Lincoln County's practice of allowing qualified jurors to opt out of jury service substantially fails to comply with Missouri's jury selection statutes.

The facts of this case are clear. The presiding judge's policy permitted seven individuals to unilaterally elect community service in lieu of having their names placed on the "qualified jury list." Section 494.415. The question we must answer is whether this opt-out practice constituted a "substantial failure to comply" with Missouri's jury selection statutes. Section 494.465; *State v. Anderson,* 79 S.W.3d 420, 431 (Mo. banc 2002). To sufficiently address this question, we first outline Missouri's jury selection statutes and secondly discuss the merits of Preston's statutory compliance claim.

#### 1. Statutory Scheme—Jury Selection Procedures

In Missouri, Sections 494.400 through 494.505 govern the procedures regarding jury selection. Section 494.400 strongly declares the policy of these sections by stating that "[a]ll persons *qualified* for grand or petit jury service ... shall be selected at random from a fair cross section of the citizens of the county," and all qualified Missouri citizens have "an obligation to serve as jurors when summoned for that purpose, *unless excused.*" Section 494.400 (emphasis added). This provision allows only two criteria for which citizens may be disqualified from the duty to serve as a juror: (1) ineligible persons and (2) persons entitled to be excused. *See* Sections 494.425 (ineligible) and 494.430 (entitled to be excused).

Each county in Missouri must have a board of jury commissioners. Section 494.405. Ordinarily, three people comprise this board—the presiding judge of the circuit, the clerk of the circuit court, and the county clerk. *Id.* This board is "responsible for managing and supervising the jury selection process." *Id.* The initial step in the jury selection process is the board's compilation of a "master jury list" for the county. Section 494.410. The master jury list contains a "random selection of names from a minimum of two government records." *Id.* At all times, the master jury list must contain four hundred names or more, and it must constitute at least five percent of the county's total population. *Id.*

From the master list, the board then randomly draws the names of as many prospective jurors as a trial court may require for a term. Section 494.415. When a prospective juror's name is drawn, the board sends that individual a "juror qualification form." *Id.* This form is designed to "[e]licit information concerning the prospective juror's *qualifications.*" *Id.* (emphasis added). For example, persons less than twenty-one years of age or persons on active duty in the armed forces are statutorily disqualified from jury service because they possess characteristics which render them ineligible. Section 494.425 (persons ineligible for jury service).

Judicial excusal is a second avenue for jury service disqualification. Section 494.430 (persons entitled to be excused from jury service). Section 494.430 provides that, if an individual makes a timely application to the court and falls within one of five enumerated categories, a judge may excuse such individual from jury service. For example, a judge may excuse an individual from jury service if he or she determines that serving as a juror would impose "an undue or extreme physical or financial hardship" on that individual. *Id.*

If it is determined from an examination of the juror qualification form that an individual is not qualified to serve as a juror due to either an ineligibility or an entitlement to be excused, the board shall delete that individual's name from its master jury list. Section 494.415. The remaining names, which comprise the individuals *not disqualified* from jury service, constitute the "qualified jury list." *Id.* Whenever a judge of the circuit court requires a panel of jurors for jury service, he or she shall designate the number of jurors required. Section 494.420. The board will then randomly draw this number from the qualified

jury list and summon them to appear at the courthouse. *Id.*

## 2. Statutory Compliance Claim

■ Here, by virtue of the community service opt-out provision provided in the juror qualification form, the presiding judge permitted seven individuals to intentionally remove their names from Lincoln County's qualified jury list without demonstrating that they were either ineligible or entitled to be excused under Missouri's jury selection statutes. This opt-out practice constitutes an obvious deviation from the statutory jury selection procedures outlined above. Sections 494.425 and 494.430 are the only statutory provisions absolving certain persons from their obligation to serve as jurors when summoned. Neither section authorizes a presiding judge to allow individuals to trade potential jury service obligations for community service. Moreover, no other statutory provision in Chapter 494 suggests that such a practice logically extends from the declared policy of Sections 494.400 to 494.505. We acknowledge the State's position that the community service opt-out choice initiated by Lincoln County roughly tracks the penalties a court may impose for the willful non-attendance of a juror under Section 494.450. That is, a court may order such a contumacious individual to participate in community service and pay a fine. Nonetheless, we find no statutory or judicial authority suggesting that an individual may be permitted to choose a non-attendance penalty up-front rather than face potential jury service. Accordingly, we cannot hold that such a practice complies with our jury selection statutes.

Still, the test to be applied in this case is not one of strict statutory compliance. Rather, only a " 'substantial failure' to comply with the statutory jury selection requirements" will entitle Preston to relief. *Anderson,* 79 S.W.3d at 431 (citing Section

494.465.1). In *Anderson,* the Missouri Supreme Court held that "a 'substantial' failure to comply is one that either rises to the level of a constitutional violation, and/or that actually prejudices a defendant." *Id.* But *Anderson* also acknowledged that:

> In rare cases, certain violations of the statutory jury selection requirements may be so *fundamental* or *systemic in nature* as to amount to a 'substantial' failure to comply with the statutes, thereby entitling a defendant to relief, even in the absence of a clear showing of actual prejudice or of a constitutional violation.

*Id.* at 431 n. 4 (citing *State v. Gresham,* 637 S.W.2d 20, 26 (Mo. banc 1982)) (emphasis added). To elucidate the distinctions the *Anderson* Court made when it articulated the meaning of "substantial failure to comply," it is helpful to compare the facts at issue in *Anderson* with the facts in *Gresham.*

In *Gresham,* the evidence showed that the county board of jury commissioners removed certain individuals from a jury list, not because of statutory ineligibilities, but because the board members perceived certain individuals to be lacking the qualities found in a good juror. *Gresham,* 637 S.W.2d at 25–26. Put simply, the board made a subjective determination and restricted the list of potential jurors to those individuals who possessed the "right attitude." *Id.* at 25. Thus, the Court held that even though the defendant had not shown that he was actually and in fact prejudiced by this procedural irregularity [3], such a practice substantially departed from the policy of the jury selection statutes. *Id.* at 26. The Court emphasized

that this irregularity "readily lends itself to jury packing." *Id.* at 26.

In *Anderson,* the defendant alleged that certain persons who were known to be ill, to have a doctor's appointment, or to be working out-of-town for extended periods of time were *excused* from the county's qualified jury list. *Anderson,* 79 S.W.3d at 431. The Court held that there was no substantial failure to comply with the policy of the jury selection statutes because (1) the alleged deviation did not violate the defendant's constitutional right to have a jury selected from venires that represent a fair cross section of his community and (2) the defendant had not shown how he was prejudiced by such an isolated and technical statutory violation. *Id.* at 432. *Anderson* emphasized that "[t]he exclusion of a prospective juror for reasons not listed in the [excusal] statute is not grounds for reversal absent a showing that a defendant was actually prejudiced by failure to strictly observe the statutory provisions for excuse." *Id.* at 432. In its opinion, the Court reconciled why it required the *Anderson* defendant to demonstrate prejudice when it had not required the same from the *Gresham* defendant twenty-two years earlier. *Id.* at 431 n. 4. The difference stems from the degree of the statutory violation, i.e., whether the statutory violation was "fundamental or systemic in nature." *Id.* at 431 n. 4.

Because removing jurors who lack the "right attitude" from county jury lists fundamentally undermined Missouri's jury selection statutes, the *Gresham* defendant was not required to demonstrate prejudice. *Gresham,* 637 S.W.2d at 25–26. In a sense, the prejudice suffered in *Gresham* was presumed due to the severity of the

---

3. The *Gresham* Court's couched the critical test as follows: "[I]n the absence of a showing that a defendant was actually and in fact prejudiced by irregularities in the board's procedures, the test to be applied is whether there has been substantial compliance with the statutes." *Id.* at 25.

statutory violation. However, where the precise language of the excusal statute, Section 494.430, was only slightly infringed by the removal of individuals from qualified jury lists because the circuit clerk knew them to be ill or unavailable for some reason, *Anderson* found that the statutory violation was not systemic or fundamental. *Anderson,* 79 S.W.3d at 432. As such, the added demonstration of either prejudice or of a constitutional cross section violation was required. *Id.* at 431–32.

In this case, we find that the presiding judge's practice of allowing otherwise qualified jurors to opt-out of obligatory jury service to be a fundamental and systemic deviation from the declared policy of sections 494.400 to 494.505. Unlike the facts in *Anderson,* the seven potential jurors were not excused from jury service because the Lincoln County Circuit Court had knowledge of facts that would allow these seven individuals to be excused. To the contrary, judicial discretion was completely removed from this process. As such, Preston has presented sufficient evidence to support his claim that the Lincoln County Circuit Court failed to substantially comply with the jury selection statutes. Preston need not demonstrate prejudice, and the motion court clearly erred in requiring him to do so.

Two recent cases—*State v. Sardeson,* 174 S.W.3d 598, 601 (Mo.App. S.D.2005), and *Hudson,* 248 S.W.3d at 60—have found fundamental and systemic violations of the statutory jury selection requirements that obviated the need for the defendants to show anything more than substantial non-compliance with the statutes. These cases' facts parallel each other. In both instances, a computer error caused those selected from the qualified jury list to the defendants' venire panel to be seated from oldest to youngest in the courtroom during *voir dire. Sardeson,* 174 S.W.3d at 601; *Hudson,* 248 S.W.3d at 57.

The seating of the venire panel was supposed to be random. The practical effect of this error caused the *Sardeson* jury to seat no person under the age of forty-four and the *Hudson* jury to seat no person under the age of thirty-six. *Sardeson,* 174 S.W.3d at 601; *Hudson,* 248 S.W.3d at 57.

Though the community service opt-out practice which Preston complains of here does not directly impinge on the concept of *random* juror selection as did the violations in *Sardeson* and *Hudson,* Lincoln County's practice implicates two other principles fundamental to the declared policy of the jury selection statutes. First, all qualified citizens have "an *obligation* to serve as jurors when summoned for that purpose, unless excused." Section 494.400 (emphasis added). Second, excusal from jury service is generally predicated on a *discretionary judicial determination.* Section 494.430.1(2),(3). Permitting an otherwise qualified Missouri citizen to thwart these two principles by intentionally and unilaterally choosing to remove their name from a county's qualified jury list and forgo any potential jury obligations constitutes a statutory violation, one that is fundamental and systemic in nature. Point granted.

*Conclusion*

Because the jury selection practice in place at the time of Preston's trial constituted a fundamental and systemic failure to comply with the statutory jury selection requirements, we hold that the motion court's judgment denying Preston's amended motion for post-conviction relief was clearly erroneous. We reverse and remand Preston's case for new trial.

ROBERT G. DOWD, JR. and NANNETTE A. BAKER, JJ., concur.